**No. 26-1046**
**(consolidated with No. 26-1032)**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

MARTIN LUTHER KING, JR. COUNTY,

Petitioner,

v.

SEAN DUFFY IN HIS OFFICIAL CAPACITY AS SECRETARY OF
THE U.S. DEPARTMENT OF TRANSPORTATION; THE U.S.
DEPARTMENT OF TRANSPORTATION; THE FEDERAL MOTOR
CARRIER SAFETY ADMINISTRATION; THE UNITED STATES,

Respondents.

On Petition for Review of a Final Rule of the Federal Motor Carrier
Safety Administration

## REPLY IN SUPPORT OF EMERGENCY MOTION FOR STAY
## PENDING JUDICIAL REVIEW

Paul J. Lawrence
Kevin J. Kennedy
Eugene Lee
PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
(206) 240-1700

*Counsel for Petitioner*

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................1

II.   ARGUMENT ....................................................................................2

   A.   Petitioner is Likely to Succeed on the Merits.............................2

     1.   The Rule exceeds FMCSA's statutory authority. ......................2

     2.   The Rule does not reflect reasoned decision-making. ..............5

     3.   The Rule is based on a pretextual explanation. ......................12

   B.   Petitioner Satisfies the Remaining Stay Factors. ......................13

III.  CONCLUSION ................................................................................15

# TABLE OF AUTHORITIES

**Federal Cases**

*Action on Smoking & Health v. CAB*,
    699 F.2d 1209 (D.C. Cir. 1983) ...............................................................9

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019) ..................................................................... 12, 13

*FiberTower Spectrum Holdings, LLC v. FCC*,
    782 F.3d 692 (D.C. Cir. 2015) ................................................................7

*Harrington v. Purdue Pharma L. P.*,
    603 U.S. 204 (2024) ...........................................................................3, 4

*League of Women Voters of United States v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ..................................................................14

*Lujan v. Fed. Motor Carrier Safety Admin.*,
    No. 25-1215 (consolidated with No. 25-1224), 2025 WL 3182504
    (D.C. Cir. Nov. 13, 2025) ...................................................................14

*Magnetsafety.org v. Consumer Prod. Safety Comm'n*,
    129 F.4th 1253 (10th Cir. 2025) ...........................................................7

*Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ...............................................................................12

*Office of Commc'n of United Church of Christ v. FCC*,
    707 F.2d 1413 (D.C. Cir. 1983) .............................................................9

*SEC v. Chenery Corp.*,
    318 U.S. 80 (1943) ...............................................................................10

*Tozzi v. U.S. Dep't of Health & Hum. Servs.*,
    271 F.3d 301 (D.C. Cir. 2001) .............................................................13

*World Shipping Council v. Fed. Mar. Comm'n*,
    152 F.4th 215 (D.C. Cir. 2025) ..............................................................6

ii

**Federal Statutes**

49 U.S.C. § 31311(a)(12)(B)........................................................................2

49 U.S.C. § 31311(a)(12)(B)(ii) ..............................................................2, 3

49 U.S.C. § 31311 ...................................................................................5

49 U.S.C. § 31305(a) ..........................................................................2, 3, 4

49 U.S.C. § 31308 ..............................................................................2, 4

 **Federal Regulations**

76 Fed. Reg. 26,854 (May 9, 2011) ..........................................................4

91 Fed. Reg. 7044 (2026) ...............................................................10, 14

**Other Authorities**

Executive Order 14281 ........................................................................8

## I.    INTRODUCTION

Respondents claim the Rule furthers safety concerns, but cite no credible evidence of safety benefits from debarring almost 200,000 trained and experienced Commercial Driver's License (CDL) holders because of their immigration status or States' ability to access driving histories. This Court should stay the Rule because (1) this lack of credible evidence renders the Rule arbitrary and capricious; and (2) the Rule exceeds the Federal Motor Carrier Safety Administration's (FMCSA) authorization to regulate the fitness and training of CDL applicants.

Instead of safety, this is a rule about removing nearly all documented immigrants from our roads. DOT Press Conference by Sec. Duffy, Oct. 30, 2025 at 2:08-2:45[1] (CDLs were originally "envisioned" only for U.S. Citizens). Safety is just a pretext to further the administration's anti-immigrant policy. *See id.* at 19:14–21:33. But discouraging immigration is not a valid basis for FMCSA to adopt the Rule.

---

[1] Available at https://www.youtube.com/watch?v=lxTuvQvJrlk&t=38s.

1

Considering the harm caused without an emergency stay, Petitioner's motion should be granted.

## II.     ARGUMENT

### A.     Petitioner is Likely to Succeed on the Merits.

### 1.     The Rule exceeds FMCSA's statutory authority.

The Rule's *only* change is to exclude certain noncitizens from obtaining non-domiciled CDLs. FMCSA acknowledges there is no correlation between these noncitizens and negative safety outcomes. Resp. at 16. The parties agree that FMCSA's authority is limited to regulating safety. Accordingly, there should be no dispute that the Rule exceeds FMCSA's authority.

Respondents incorrectly cite 49 U.S.C. § 31311(a)(12)(B)(ii) as providing unfettered authority to regulate non-domiciled CDLs. Resp. 10. But that provision merely states that *States may issue* non-domiciled CDLs pursuant to "regulations prescribed by the Secretary." 49 U.S.C. § 31311(a)(12)(B). By its terms, the provision does not confer substantive rulemaking authority on FMCSA—rather, the provision merely references regulations authorized elsewhere, for example in 49 U.S.C. §§ 31305(a) and 31308. And that provision certainly does not

2

confer *carte blanche* power for FMCSA to regulate far afield of its statutory mandate to ensure driver safety. Yet FMCSA offers no limit to its reliance on § 31311(a)(12)(B)(ii).

Looking to those provisions that actually confer rulemaking authority on FMCSA—49 U.S.C. §§ 31305(a) and 31308—neither authorizes the Rule. FMCSA primarily maintains that § 31305(a)'s instruction to ensure "driver fitness" encompasses the authority to categorically deny CDLs to most lawfully present immigrants, irrespective of their individual fitness. Resp. 10. That assertion is implausible on its face.  And the statutory context confirms as much: the mandates to set "minimum standards" for "driver fitness" and "testing" appear together, followed by a series of discrete, individual-specific methods of measuring a *particular applicant's* driver safety. 49 U.S.C. § 31305(a). Those phrases might encompass a requirement that applicants provide evidence of their driving history—foreign and domestic—in a comprehensible and reliable format. But neither phrase confers the "radically different power" to forbid entire categories of otherwise-eligible persons (*i.e.*, individuals lawfully present and work-authorized under federal law) from obtaining CDLs. *Harrington v.*

3

*Purdue Pharma L. P.*, 603 U.S. 204, 205 (2024) (cleaned up). Respondents offer no rebuttal to this straightforward inference from the statutory context.

Section 31308 similarly does not authorize FMCSA to issue this Rule. Indeed, Respondents eschew any reliance on that provision before this Court. Resp. 10-12. And for good reason: § 31308 authorizes FMCSA to set minimum procedural standards for States' issuance of CDLs. The Rule's categorical eligibility changes are not a mere update to States' processes for issuing CDLs.

FMCSA's prior regulations demonstrate the proper application of its rulemaking authorities. In 2011, relying on 49 U.S.C. §§ 31305(a) and 31308, FMCSA issued a rule creating the category of "non-domiciled" CDLs. 76 Fed. Reg. 26,854, 26,878 (May 9, 2011). That regulation fit comfortably within § 31305(a) because it extended the agency's individualized measures of driver fitness to a new group of people. Unlike the Rule here, it did not forbid multiple categories of people from demonstrating their fitness to drive a commercial vehicle. Similarly, consistent with § 31308, that regulation established documentary standards to ensure compliance with existing federal law,

namely that applicants must be lawfully present and authorized to work. That regulation did not, like the Rule here, impose a broad and novel restriction on eligibility.

Nor does FMCSA have statutory authority to categorically bar groups of noncitizens from obtaining CDLs on the grounds of administrative efficiency alone. FMCSA concedes, for example, that with respect to DACA recipients, the Rule has no safety justification. Resp. 23. But FMCSA identifies no law authorizing it to facilitate compliance via brightline rules divorced from driver safety. Rather, the statute sets forth a mechanism for ensuring state compliance with federal law: the withholding of federal funds under 49 U.S.C. § 31311.

This Court should stay the Rule because FMCSA lacks authority to preclude licensure based solely on novel, immigration-based categories instead of individualized safety standards.

## 2.    The Rule does not reflect reasoned decision-making.

FMCSA's use of overbroad class-based judgments—without genuine safety justification—also demonstrates that the Rule is arbitrary and capricious. Just as FMCSA lacked evidence supporting a relationship between immigration status and driver safety—which

Respondents concede, Resp. 16—FMCSA furnished no evidence connecting immigration status, access to driving history, and ultimately, driver safety. No such evidence exists.

Respondents repeatedly emphasize the importance of access to an applicant's driving history, stressing that a driver's "historical performance" is a "robust basis for predicting future safety outcomes on the road." Resp. 6. But the Rule does not further the aim of issuing CDLs only upon the vetting of an applicant's driving history. Respondents do not contest that other applicants may obtain a CDL without *any* driving history. Respondents similarly do not dispute that many foreign-domiciled drivers have extensive domestic driving histories, while many domestic-domiciled drivers have extensive foreign driving histories. Judged by the Rule's central logic of access to driving history, therefore, it is "internally inconsistent" for the Rule to categorically bar only the foreign-domiciled groups while leaving regulation of domestic-domiciled drivers unaffected. *World Shipping Council v. Fed. Mar. Comm'n*, 152 F.4th 215, 221 (D.C. Cir. 2025).

Respondents assert that people ineligible under the Rule "tend" to have foreign driving histories but cite no such finding in the Rule. Resp.

6

16. Nor could they: An analysis of the extent of foreign driving history possessed by categories of applicants—which *should be* central to the Rule's logic—is absent. Respondents maintain that they were entitled to evaluate CDL applicants "*as a class,*" but cite no circuit precedent to support their evidence-less approach. Resp. 18. And their out-of-circuit case only indicates that a class-wide judgment may be appropriate where an agency conducted a comparative analysis and explained its conclusion. *See Magnetsafety.org v. Consumer Prod. Safety Comm'n*, 129 F.4th 1253, 1265 (10th Cir. 2025) (noting agency's explanation). Here, the agency conducted no analysis of foreign driving history by class of applicant.

Instead, FMCSA *assumed*, without any support, that foreign-domiciled applicants would have extensive foreign driving histories and domestic drivers would not. Agency actions must be supported by "substantial evidence." *FiberTower Spectrum Holdings, LLC v. FCC*, 782 F.3d 692, 700 (D.C. Cir. 2015) (cleaned up). The evidence here is nonexistent.

An agency genuinely motivated by facilitating more effective vetting of driving histories would have undertaken any number of less-

7

drastic alternatives before categorically barring lawfully present noncitizens from receiving CDLs. That is particularly true in an Administration committed to "meritocracy and a colorblind society." Executive Order 14281 (EO), *Restoring Equality of Opportunity and Meritocracy*, 90 Fed. Reg. 17537. Specifically, FMCSA could have required that every CDL applicant submit five years of a certified driving record, and required that any foreign driving history be accompanied by a form that translates those records, thus making them easily comprehensible. Or it could have required that all drivers—not just domestic-domiciled drivers—relinquish any foreign driver's license during the pendency of their CDL licensure. Issuing CDLs to foreign-domiciled drivers with extensive domestic driving history and no interest in further foreign driving perfectly matches the Rule's supposed logic. Respondents claim it is too difficult for States to verify foreign driving histories yet offer no evidence. Resp. 20. That unsupported assertion is particularly dubious given that, elsewhere, FMCSA's assessment of States' licensing capabilities ran counter to the evidence. *Infra* pp. 11–12.

When changing policy to bar 200,000 previously eligible CDL holders, FMCSA was required to consider reliance interests and the availability of less burdensome options. *Office of Commc'n of United Church of Christ v. FCC*, 707 F.2d 1413, 1440 (D.C. Cir. 1983) (FCC improperly eliminated programming logs without considering retention of logs in modified form); *Action on Smoking & Health v. CAB*, 699 F.2d 1209, 1216, 1218 (D.C. Cir. 1983) (similar). Here, FMCSA adequately considered neither.

FMCSA's efforts to justify the Rule's terms underscore the agency's arbitrary decision-making. Begin with FMCSA's exclusion of Deferred Action for Childhood Arrivals (DACA) recipients, who—as explained, Mot. 16–17—are much more likely than domestic-domiciled drivers to have exclusively domestic driver histories. Faced with that undeniable fact, Respondents acknowledge that a driving-history rationale undermines the categorical exclusion of DACA recipients. Resp. 18. Those drivers represent over one fifth of the drivers excluded under the Rule.[2]

---

[2] *See* J.B. Hunt, *Immigration Policy and Enforcement Impact on U.S. Commercial Driver Supply* (Oct. 28, 2025), https://www.jbhunt.com/blog/enterprise/immigration-policy-impact.

FMCSA's driving-history rationale similarly undermines the arbitrary line between the now-excluded drivers and drivers still permitted to hold CDLs (H-2A, H-2B, and E-2 visa-holders). Respondents inaccurately contend that the Rule "confirms" that consular offices "in fact" request "10 years of driving history," Resp. 20; but the Rule only indicates consular offices "generally include" such requests. 91 Fed. Reg. 7044, 7060 (2026). Similarly, while Respondents assert that "many" CDL holders operate independently and thus aren't subject to employer vetting, Resp. 21, there is no reasoning in the Rule to that effect. This is forbidden post-hoc rationalization. *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943). These shortcomings underscore that the "vetting processes" FMCSA relies upon cannot support the Rule's eligibility reversal, which impacts 200,000 licensed CDL drivers.

The Rule's separate administrative-compliance rationale is equally incapable of justifying the Rule. The Rule removes Employment Authorization Documents (EADs) from the list of documents sufficient to support a non-domiciled CDL application, thus limiting non-domiciled CDLs to applicants with I-94 forms with an H-2A, H-2B, or E-2 visa. 91 Fed. Reg. 7102. FMCSA disavows any safety-related benefit

10

stemming specifically from this change. Resp. 23 (It was "not States' licensing deficiencies *per se*, that had a 'relation to safety' requiring FMCSA's intervention"). Rather, FMCSA claims the change is justified by the need to improve administrability and state compliance with federal requirements. That justification falls short.

FMCSA claims that because noncompliance—primarily the issuance of CDLs enduring beyond the end of the EAD period—is "consistent" across "more than 30 states," the noncompliance could not be chalked up to a training deficiency and thus could only be solved by changing the documentation requirements. Resp. 25. But the evidence simply does not support FMCSA's assertion. FMCSA's own data for 24 States shows compliance rates all over the map: Over half the States exhibited minimal noncompliance, with FMCSA finding zero to three instances of CDL expirations exceeding the period covered by EADs.[3]

---

[3] FMCSA-2025-0622-8065, at 4 (Rhode Island; 0 instances of 50 records sampled); FMCSA-2025-0622-8095, at 4 (Oregon; 0 of 75); FMCSA-2025-0622-8061, at 4 (North Dakota; 0 of 50); FMCSA-2025-0622-8092, at 4 (Maryland; 0 of 100); FMCSA-2025-0622-8054, at 3–4 (Maine; 0 of 25); FMCSA-2025-0622-8057, at 4 (Delaware; 0 of 50); FMCSA-2025-0622-8068, at 5 (Pennsylvania; 2 of 150); FMCSA-2025-0622-4009, at 6–7 (Washington; 1 of 125); FMCSA-2025-0622-8060, at 4 (Ohio; 3 of 125); FMCSA-2025-0622-8093, at 3 (New Jersey; 2 of 129); FMCSA-2025-

Respondents note much higher rates in other States, Resp. 24, but those outlier States hardly indicate that noncompliance follows from the inherent complexity of EAD documents. Rather, the only reasonable conclusion from FMCSA's data is that some States had proper safeguards in place to ensure compliance, while others did not. In other words: a lack of training in certain jurisdictions. Because FMCSA "offered an explanation for its decision that runs counter to the evidence before the agency," the Rule is arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

3.    **The Rule is based on a pretextual explanation**.

Given the poor fit between the Rule and FMCSA's proffered rationale, the true purpose of the Rule is evident: to expand immigration enforcement. Mot. 24–26. Rather than confront this argument, Respondents assert that the Court must ignore public statements and that FMCSA's justification is sincere because the Rule enhances road safety. Neither assertion is persuasive.

---

0622-8059, at 4 (District of Columbia; 3 of 32); FMCSA-2025-0622-8064, at 4 (Michigan; 2 of 75).

Excluding public statements from Administrative Procedure Act review impermissibly requires courts "to exhibit a naiveté from which ordinary citizens are free." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) (cleaned up). And consideration of such public statements does not unduly intrude into Executive Branch functions. *Id.* at 780–81. Thus, this circuit, like others, considers public statements in reviewing agency action. *See, e.g.*, *Tozzi v. U.S. Dep't of Health & Hum. Servs.*, 271 F.3d 301, 312 (D.C. Cir. 2001). And contrary to Respondents' contention, the Rule is, for reasons discussed *supra* pp. 6–12, anything but "precise[]" in addressing road safety. Resp. 17. The serious "disconnect between the decision made and the explanation given," *Dep't of Com.*, 588 U.S. at 785, flags FMCSA's justification as pretextual.

## B.    Petitioner Satisfies the Remaining Stay Factors.

Without a stay, Petitioner will suffer irreparable harm. Following the effective date, King County Metro is facing the loss of the $800,000 spent training its four trainees and 50 bus drivers who are ineligible to receive or renew their licenses under the Rule. Eldred Declaration ¶¶ 23, 31. Respondent's claim that the Metro's employees may continue

13

to drive until their CDLs expire, Resp. 26, does nothing to diminish that, absent a stay, these bus drivers may have their licenses revoked at any moment. Eldred Declaration ¶ 23. Nor does it alter the fact that many of these drivers will face expiration during the pendency of this Court's review. And Respondents entirely ignore the safety harms imposed by the Rule. As explained in the motion and recognized by this Court, the Rule creates risks by replacing "safer experienced drivers with less-safe new drivers." *Lujan v. Fed. Motor Carrier Safety Admin.*, No. 25-1215 (consolidated with No. 25-1224), 2025 WL 3182504 at \*2 (D.C. Cir. Nov. 13, 2025) (per curiam).

The balance of the equities and public interest factors also weigh in Petitioner's favor. Under the Rule, 194,000 current non-domiciled CDL holders will lose their jobs and their incomes. 91 Fed. Reg. at 7096. And local governments across the nation will not only lose experienced drivers but also subject the public to the inevitable safety risks of putting many inexperienced drivers on the roads. In response, the government asserts "broad-based and urgent harms." Resp. 26. But what are these harms? As explained, the safety benefits of the Rule are entirely speculative. Respondents also lean on an asserted per se

14

irreparable harm from being unable to enforce the unlawful Rule, but "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). The Rule's immediate disruption of drivers' livelihoods and their employers' ability to provide services in a manner that serves the public interest outweigh those speculative and abstract harms.

## III.    CONCLUSION

The Court should grant Petitioner's motion for a stay.

Respectfully submitted,

/s/ Paul J. Lawrence
Paul J. Lawrence
Kevin J. Kennedy
Eugene Lee
PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
(206) 240-1700

*Counsel for Petitioner*

March 23, 2026

15

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,596 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

/s/ Paul J. Lawrence
Paul J. Lawrence

# CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2026, I electronically filed this motion with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Paul J. Lawrence
Paul J. Lawrence