**ORAL ARGUMENT NOT SCHEDULED**

**No. 26-1046**
**(consolidated with No. 26-1032)**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————

MARTIN LUTHER KING, JR. COUNTY,
*Petitioner*,

v.

SEAN P. DUFFY, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE
U.S. DEPARTMENT OF TRANSPORTATION, et al.,
*Respondents*.

———————

On Petition for Review of a Rule of the
Federal Motor Carrier Safety Administration

———————

**RESPONSE TO MOTION TO COMPLETE ADMINISTRATIVE RECORD**

———————

BRETT A. SHUMATE
  *Assistant Attorney General*

BRAD HINSHELWOOD
SIMON G. JEROME
GABRIEL I. SCHONFELD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7209*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, D.C. 20530*
  *(202) 514-1673*
  *simon.g.jerome@usdoj.gov*

Petitioner King County has moved to "complete" the administrative record. King County acknowledges that to succeed, it must show that "specific documents . . . were omitted" from the administrative record, Mot. 7, but its motion does not identify any specific documents it believes this Court should compel the agency to include. King County's motion should be denied.

## BACKGROUND

King County challenges a final rule issued by the Federal Motor Carrier Safety Administration (FMCSA) that (as relevant to this motion) restricts eligibility for commercial driver's licenses (CDLs) for aliens not domiciled in the United States. *See* 91 Fed. Reg. 7044 (Feb. 13, 2026). Under the Rule, eligibility for a non-domiciled CDL is limited to holders of H-2A, H-2B, and E-2 visas who undergo a "combination of Federal [vetting] processes," the "totality" of which is reasonably equivalent to the screening required of domestic drivers. *Id.* at 7049-51.

As the Rule's preamble explains, FMCSA based that determination in part on consultations with two other federal agencies—the Department of State, which administers the consular screening and adjudication processes through which visas are issued, 91 Fed. Reg. at 7050; and the Department of

Labor, which processes employer applications for "labor certifications" that filling a specific position with an H-2A or H-2B visa holder would plug a gap in the domestic labor supply and would not prejudice domestic workers, *id.* at 7050-51, 7060.

During those consultations, the Department of State "confirmed that consular officers adjudicating [H-2A, H-2B, and E-2] visa applications assess certain factors relevant to both visa eligibility and [commercial motor vehicle (CMV)] driver fitness, including but not limited to driving history, occupational qualifications, and English language proficiency." 91 Fed. Reg. at 7050. In particular, the consular officer considering such an application "reviews and requests evidence establishing whether the . . . applicant has a history of unsafe driving, and other relevant factors to the visa adjudication (*e.g.*, whether they possess the requisite years of experience listed for that particular job or hold a valid CDL or can obtain one)." *Id.* This "generally includes requests for 10 years of driving history, past traffic violations, license suspensions and revocations, and other similar records." *Id.* The consular screening process also includes an "assessment of English proficiency during [an] interview," which provides "reasonable assurance . . . [of] the basic English proficiency necessary to operate a CMV safely." *Id.*

2

The Department of Labor likewise confirmed how its labor certification procedures typically work for jobs that require a CDL. An employer seeking a certification for a specific position submits application paperwork that lists the position's job qualifications and requirements. *See* 20 C.F.R. §§ 655.18(a)(2), 655.122(b). Through its consultations with the Department of Labor, "FMCSA understands that employer applications related to commercial trucking typically include some combination of the following job requirements: possess U.S. CDL or foreign CDL equivalent, related work experience (12 months to two years), clean driving record, pass drug or medical testing, and knowledge of or proficiency in English." 91 Fed. Reg. at 7060.

## ARGUMENT

Petitioner King County has moved to "complete" the administrative record with "documents—or portions of documents—containing factual material that supports FMCSA's Rule," in particular "documents and communications" with the Department of State and the Department of Labor. Mot. 2-3. That motion should be denied.

"The administrative record includes all materials compiled by the agency that were before the agency at the time the decision was made[.]"

*James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (citation and quotation omitted). It is well settled that "predecisional and deliberative documents are not part of the administrative record." *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) (quotation omitted). "Because predecisional documents are 'immaterial,' they are not 'discoverable,'" and thus an agency need not provide a "privilege log" identifying documents omitted from the administrative record. *Id.*

An agency's designation of the administrative record, "like any established administrative procedure, is entitled to a presumption of administrative regularity" that may be overcome (as relevant here) only by a "substantial showing . . . that the record was incomplete." *Oceana,* 920 F.3d at 865 (quotation omitted) (quoting *Natural Res. Def. Council, Inc. v. Train*, 519 F.2d 287, 291 (D.C. Cir. 1975)). As King County acknowledges, the required showing must identify "specific documents that were omitted" from the administrative record. Mot. 7; *see, e.g.*, *Train*, 519 F.2d at 289, 291-92 (plaintiff filed affidavit "list[ing] several documents which had been relied upon by the Administrator and had come to the attention of counsel but which were not included among those filed with the court"); *Estate of Insinga ex rel. Gilmore v. Commissioner*, 149 F.4th 709, 717, 723 (D.C. Cir.

4

2025) (plaintiff moved to include specific memorandum on which the agency decisionmaker had relied and which was later produced to plaintiff in discovery).

That standard is not met here. King County has not identified any specific documents it believes were omitted from the administrative record. Instead, it argues that because the Rule relies upon "factual information provided by [other federal agencies]," but the administrative record includes no "documentation" of that information, it must be the case that unidentified non-deliberative documents exist that were considered by the agency but wrongly omitted. Mot. 6-7. That is wholly unlike cases in which a party asks that the record be completed with specific documents it believes were excluded in error. Indeed, because King County has identified no specific documents it believes were omitted, it is entirely unclear what this Court would order FMCSA to "complete" the record *with*.

In any event, King County's conclusion does not follow. Agencies can and do engage in consultations—for example by phone or videoconference—that do not generate the type of "documents" that King County asserts must exist here, and King County identifies no freestanding obligation to memorialize unwritten communications. Moreover, one agency may confirm

5

it is accurately describing the processes of another through methods King County does not appear to dispute would be plainly deliberative, such as by sharing draft rule or preamble language for the agency being consulted to review. *See Oceana*, 920 F.3d at 865 ("[P]redecisional and deliberative documents are not part of the administrative record to begin with . . . ." (quotation omitted)); *Reporters Comm. for Freedom of the Press v. Federal Bureau of Investigation*, 3 F.4th 350, 367 (D.C. Cir. 2021) (discussing "draft regulations" as an example of documents that are protected by the deliberative process privilege because they "discuss and debate proposed agency policies, positions, and actions").

Nevertheless, in an effort to be as thorough as possible, FMCSA has conducted another review of materials connected to the rulemaking here during preparation of this response. In consultation with the Department of Labor, FMCSA has determined that one additional document may properly be included in the administrative record as non-privileged material. Concurrently with this response, FMCSA has provided a supplemental certified administrative record to the petitioner here and in the consolidated *Lujan* case that discloses that document.

There is thus no basis to order "completion" of the administrative record here.[1] King County is, of course, free to argue that the administrative record does not support the Rule. But having identified no specific documents that it believes were part of the administrative record but have been incorrectly omitted, King County has not met its burden to show that "completion" is warranted.

---

[1] Because, as already explained, FMCSA has certified that the administrative record contains the relevant non-privileged, non-deliberative documents, if ordered to "complete" the record with non-privileged information related to consultation with other agencies, FMCSA anticipates that it could likely do so only through one or more declarations largely repeating the non-privileged information about those consultations already provided in the preamble to the Rule. *See Environmental Def. Fund, Inc. v. Costle*, 657 F.2d 275, 285 (D.C. Cir. 1981) (explaining that court may obtain "affidavits" that are "explanatory of the original record" if "the record is inadequate").

# CONCLUSION

For the foregoing reasons, the Court should deny King County's motion to complete the administrative record.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

BRAD HINSHELWOOD
 */s/ Simon G. Jerome*

SIMON G. JEROME
GABRIEL I. SCHONFELD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7209*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, D.C. 20530*
  *(202) 514-1673*
  *simon.g.jerome@usdoj.gov*

JUNE 2026

8

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing response complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the response contains 1,338 words. The response complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it has been prepared using Microsoft Word 365 in proportionally spaced 14-point CenturyExpd BT typeface.

/s/ *Simon G. Jerome*
Simon G. Jerome